## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| LIBERTY ACCESS TECHNOLOGIES LICENSING LLC,<br><br>Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS & RESORTS, INC. and WYNDHAM HOTEL GROUP, LLC,<br><br>Defendants. | Civil Action No. 2:24-cv-00125<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Liberty Access Technologies Licensing LLC ("Liberty Access" or "Plaintiff") files this Complaint for patent infringement against Defendants Wyndham Hotels & Resorts, Inc. ("Wyndham H&R") and Wyndham Hotel Group, LLC ("Wyndham Group," and collectively hereinafter, "Wyndham" or "Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is a patent infringement action to stop Defendants' infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| U.S. Patent No. | Title | Available At |
|---|---|---|
| 9,373,205 | Access Control System And Method For Use By An Access Device | USPTO.GOV, https://patentcenter.uspto.gov/applications/14603434, https://ppubs.uspto.gov/pubwebapp/external.html?q=9,373,205.pn.&db=USPAT. |

| U.S. Patent No. | Title | Available At |
|---|---|---|
| 10,657,747 | Access Control System And Method For Use By An Access Device | USPTO.GOV, https://patentcenter.uspto.gov/applications/16034278, https://ppubs.uspto.gov/pubwebapp/external.html?q=10,657,747.pn.&db=USPAT. |
| 11,443,579 | Access Control System And Method For Use By An Access Device | USPTO.GOV, https://patentcenter.uspto.gov/applications/17657752, https://ppubs.uspto.gov/pubwebapp/external.html?q=11,443,579.pn.&db=USPAT. |
| 11,217,053 | Access Control System and Method for Use by an Access Device | USPTO.GOV, https://patentcenter.uspto.gov/applications/16847719, https://ppubs.uspto.gov/pubwebapp/external.html?q=11,217,053.pn.&db=USPAT. |

2.    Liberty Access seeks injunctive relief and monetary damages.

## PARTIES

3.    Liberty Access is a limited liability company organized under the laws of the State of Texas, with a place of business at 815 Brazos Street, Suite 500, Austin, Texas 78701 (Travis County).

4.    Liberty Access is the exclusive licensee of the Asserted Patents with all rights to recover for all past, present, and future infringement, including past damages.

5.    Wyndham H&R is a corporation organized under the laws of Delaware with its corporate headquarters located at 22 Sylvan Way, Parsippany, New Jersey 07054.

6.    Wyndham H&R may be served through its registered agent for service, Corporate Creations Network Inc., which is located at 1521 Concord Pike, Suite 201, Wilmington, Delaware 19803 (New Castle).

7.    Wyndham Group is a corporation organized under the laws of Delaware with its corporate headquarters located at 22 Sylvan Way, Parsippany, New Jersey 07054.

8.     Wyndham Group may be served through its registered agent for service, Corporate Creations Network Inc., which is located at 1521 Concord Pike, Suite 201, Wilmington, Delaware 19803 (New Castle).

## JURISDICTION AND VENUE

9.     Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

10.    This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

11.    Venue is proper against Defendants in this District pursuant to 28 U.S.C. § 1400(b) because they have maintained an established and regular places of business in this District and have committed acts of patent infringement in this District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

12.    Defendants are subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendants' substantial business in this judicial district, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

13.    Specifically, Defendants intend to do and do business in, have committed acts of infringement in, and continue to commit acts of infringement in this District directly, through intermediaries, by contributing to and through their inducement of third parties, and offers their products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

14.    Defendants maintain regular and established places of business in this District.

15.    Upon information and belief and based upon public information, Defendants own, operate, manage, conduct business, and direct and control the operations of, and have employees that work from and out of, facilities at locations in this District, including, but not limited to, facilities at the following addresses:  301 East Eldorado Parkway, Little Elm, Texas 75068; 621 Central Parkway East, Plano, Texas 75074; 4800 West Plano Pkwy, Plano, Texas 75093; 1220 North Central Expressway, Allen, Texas 75013; 14700 State Highway 121, Frisco, Texas 75035; 3750 Market Street, The Colony, Texas 75056; 1657 S Stemmons Freeway, Lewisville, Texas 75067; 2210 W. FM 544, Wylie, Texas 75098; 6501 Henneman Way, McKinney, Texas 75070; 9595 John W Elliott Dr., Frisco, Texas 75033; and 2104 North Central Expressway, McKinney, Texas 75070.

16.    Defendants commit acts of infringement from their places of business in this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

## THE ACCUSED PRODUCTS

17.    Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

18.    Based upon public information, Defendants own, operate, advertise, and/or control the website  https://www.wyndhamhotels.com/wyndham  and associated hardware, software, and functionality that among other features, allows users to use a mobile device running the Wyndham Resort & Hotels mobile app to use the "digital key" feature as a key to a hotel room.  *See* **Figures 1–3** (below).



**Figure 1**

WYNDHAM HOTEL & RESORTS, https://www.wyndhamhotels.com/wyndham-mobile-app.



**Figure 2**

OPENKEY, https://www.openkey.co/lp-wyndham-digital-key/.



**Figure 3**

OPENKEY, https://www.openkey.co/lp-wyndham-digital-key/.

19.    Based upon public information, Defendants, directly and/or through their agents and intermediaries, also operate, advertise, and/or control the locations throughout this District, including at least at the locations listed above, through which they and their agents, customers, and employees use, advertise, provide, and/or educate third parties about the Accused Products.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,373,205**

20.    Liberty Access repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

21.    The USPTO duly issued U.S. Patent No. 9,373,205 (the "'205 patent") on June 21, 2016, after full and fair examination of Application No 14/603,434, which was filed on January

23, 2015.  *See* '205 patent at 1.  A Reexamination Certificate was issued on February 25, 2022

after supplemental examination of application No. 96/000,367.  *See id.,* at 14–17.

22.    Liberty Access is the exclusive licensee of the '205 patent with all substantial rights,

and interest in and to the '205 patent, including the sole and exclusive right to prosecute this action

and enforce the '205 patent against infringers, and to collect damages for all relevant times.

23.    Liberty Access or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of the

'205 patent.

24.    The claims of the '205 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity.  Rather, the claimed inventions include

inventive components that allow for secure access to control of a door lock based on information

contained in a current reservation certificate.

25.    The written description of the '205 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art priority date.

The '205 patent also identifies and circumscribes all information necessary for a skilled artisan to

perform each limitation in the claims in light of that which was known in the art at the priority

date.

26.    Defendants have infringed one or more claims of the '205 patent by using, providing,

supplying, or distributing the Accused Products.

27.    Defendants have directly infringed, either literally or under the doctrine of equivalents,

at least claim 1 of the '205 patent.

28.    For example, the Accused Products provide an access device for use in an access control system, the access device comprising: a processor having control of a door lock; and a communication module connected to the processor, the processor is configured to receive a reservation certificate presented by a portable terminal through the communication module; wherein, when a current reservation certificate that comprises an interval of a reservation is presented by the portable terminal, the processor is configured to compare the interval of the reservation of the current reservation certificate to a current time accessible to the processor, determine the current time is within the interval of the reservation, and activate the door lock to allow the portable terminal to unlock the door lock during the interval of the reservation.

29.    Since at least the time of receiving the original Complaint in this matter, Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the '205 patent by inducing others to directly infringe one or more claims of the '205 patent.  Defendants have induced and continue to induce their subsidiaries, parents, partners, affiliates, employees, and end-users, including Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '205 patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '205 patent, including, for example, claim 1 of the '205 patent.  Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '205 patent and with the

knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '205 patent.  Defendants' inducement is ongoing.

30.    Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '205 patent.  Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '205 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '205 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '205 patent, including, for example, claim 1 of the '205 patent.  The special features include, for example, the method recited in claim 1, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the '205 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

31.    On information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights).

32.    Defendants' actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

33.    Since at least the time of receiving the original Complaint in this matter, Defendants' direct and indirect infringement of one or more claims of the '205 patent was, has been, and

continue to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

34.    Plaintiff has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

35.    Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of one or more claims of the '205 patent.  Defendants' actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,657,747

36.    Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

37.    The USPTO duly issued U.S. Patent No. 10,657,747 (the "'747 patent") on May 19, 2020, after full and fair examination of Application No. 16/034,278, which was filed on July 12, 2018.  *See* '747 patent at 1.

38.    Liberty Access is the exclusive licensee of the '747 patent with all substantial rights, and interest in and to the '747 patent, including the sole and exclusive right to prosecute this action and enforce the '747 patent against infringers, and to collect damages for all relevant times.

39.    Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '747 patent.

40.    The claims of the '747 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods for secure access to control of a door lock based on information contained in a reservation certificate.

41.    The written description of the '747 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '747 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

42.    Defendants have infringed and continue to infringe one or more claims of the '747 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

43.    Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '747 patent.

44.    For example, the Accused Products provide an access control system comprising an access device comprising a communication module connected to a processor having control of a door lock; a secure reservation interface to receive a reservation request from a first device for a

reservation at a given destination, the reservation interface comprising one or more screens for receiving a selection of a location at the destination and an interval of the reservation; a reservation server, in communication with the reservation interface and a network, to receive the reservation request for the destination that includes a selected location at the destination and an interval of the reservation; issue a reservation certificate describing the interval of the reservation based on the reservation request and the selected location; and 3) transmit, via the network, from the reservation server to a second device distinct from the first device, the reservation certificate and a communication setting corresponding to the access device, d) an application installed on the second device to receive the reservation certificate and the communication setting corresponding to the access device, wherein the application wirelessly transmits the reservation certificate to the access device using the communication setting upon receipt of a command to activate the door lock; and e) wherein the access device receives the reservation certificate from the application based on use by the application of the communication setting, and the processor activates the door lock based on at least the receipt of the reservation certificate.

45.    Since at least the time of receiving the original Complaint in this matter, Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the '747 patent by inducing others to directly infringe one or more claims of the '747 patent.  Defendants have induced and continue to induce their subsidiaries, parents, partners, affiliates, employees, and end-users, including Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '747 patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '747 patent, including, for example, claim 1 of the '747 patent.  Such

steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '747 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '747 patent.  Defendants' inducement is ongoing.

46.    Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '747 patent.  Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '747 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '747 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '747 patent, including, for example, claim 1 of the '747 patent.  The special features include, for example, the method recited in claim 1, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the '747 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

47.    Defendants have had knowledge of the '747 patent at least as of the date when they were notified of the filing of this action.

48.     Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights.

49.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

50.     Since at least the time of receiving the original Complaint in this matter, Defendants' direct and indirect infringement of one or more claims of the '747 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

51.     Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

52.     Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of one or more claims of the '747 patent.  Defendants' actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,443,579

53.     Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

54.    The USPTO duly issued U.S. Patent No. 11,443,579 (the "'579 patent") on September 13, 2022, after full and fair examination of Application No. 17/657,752, which was filed on April 2, 2022. *See* '579 patent at 1.

55.    Liberty Access is the exclusive licensee of the '579 patent with all substantial rights, and interest in and to the '579 patent, including the sole and exclusive right to prosecute this action and enforce the '579 patent against infringers, and to collect damages for all relevant times.

56.    Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '579 patent.

57.    The claims of the '579 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods secure access to control of a door lock based on information contained in a reservation certificate.

58.    The written description of the '579 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '579 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

59.     Defendants have infringed and continue to infringe one or more claims of the '579 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

60.     Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents at least claim 1 of the '579 patent.

61.     For example, the Accused Products provide an access control system comprising an access control system comprising: an access device comprising a communication module connected to a processor having control of a lock; an application on a portable terminal; and a server to provide a communication setting to the application, the communication setting corresponding to the access device, and to further provide a reservation certificate to the application, the reservation certificate comprising an interval of a reservation, wherein the application compares the interval of the reservation to a current time accessible to the application to determine if the reservation certificate is current and wherein, the application activates the lock by communicating with the access device *via* the communication setting when the application determines that the reservation certificate is current.

62.     Since at least the time of receiving the original Complaint in this matter, Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the '579 patent by inducing others to directly infringe one or more claims of the '579 patent.  Defendants have induced and continue to induce their subsidiaries, parents, partners, employees, affiliates, and end-users, including Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '579 patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes

one or more claims of the '579 patent, including, for example, claim 1 of the '579 patent. Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '579 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '579 patent. Defendants' inducement is ongoing.

63.    Since at least the time of receiving the original Complaint in this matter, Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '579 patent. Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '579 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '579 patent. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '579 patent, including, for example, claim 1. The special features include, for example, the method recited in claim 1, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the '579 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

64.     Defendants have had knowledge of the '579 patent at least as of the date when they were notified of the filing of this action.

65.     Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights.

66.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

67.     Since at least the time of receiving the original Complaint in this matter, Defendants' direct and indirect infringement of one or more claims of the '579 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

68.     Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

69.     Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of the '579 patent.  Defendants' actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 11,217,053

70.     Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

71.    The USPTO duly issued U.S. Patent No. 11,217,053 (the "'053 patent") on January 4, 2022, after full and fair examination of Application No. 16/847,719, which was filed on April 14, 2020. *See* '053 patent at 1.

72.    Liberty Access is the exclusive licensee of the '053 patent with all substantial rights, and interest in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce the '053 patent against infringers, and to collect damages for all relevant times.

73.    Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '053 patent.

74.    The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods secure access to control of a door lock based on information contained in a reservation certificate.

75.    The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '053 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

76.    Defendants have infringed and continue to infringe one or more claims of the '053 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

77.    Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents at least claim 1 of the '053 patent.

78.    For example, the Accused Products provide an access control system comprising: a) an access device comprising a short-range wireless communication module connected to a processor having control of a door lock; b) a secure reservation interface to receive a reservation request for a reservation at a given destination, the reservation interface comprising one or more screens for receiving a selection of at least an interval of the reservation; c) a reservation server, in communication with the reservation interface and a network, to: receive the reservation request for the destination, the reservation request including at least the interval of the reservation; issue a reservation certificate comprising the interval of the reservation based on at least the reservation request; transmit, via the network, from the reservation server to a smartphone, at least the reservation certificate and a short-range wireless communication setting corresponding to the access device; d) a smartphone application installed on the smartphone to receive the reservation certificate and the communication setting corresponding to the access device, wherein the smartphone application comprises a transmission module that wirelessly transmits the reservation certificate to the access device using the short-range wireless communication setting when the smartphone on which the smartphone application is installed is within short-range wireless transmission distance of the access device; and e) wherein the access device receives the reservation certificate from the smartphone application based on use by the smartphone application

of the short-range wireless communication setting, and the processor activates the door lock based on at least the receipt of the reservation certificate.

79.    Since at least the time of receiving the original Complaint in this matter, Defendants have also indirectly infringed and continue to indirectly infringe one or more claims of the '053 patent by inducing others to directly infringe one or more claims of the '053 patent.  Defendants have induced and continue to induce their subsidiaries, parents, partners, employees, affiliates, and end-users, including Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '053 patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '053 patent, including, for example, claim 1 of the '053 patent.  Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '053 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '053 patent.  Defendants' inducement is ongoing.

80.    Since at least the time of receiving the original Complaint in this matter, Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '053 patent.  Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '053 patent by personnel,

contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '053 patent. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '053 patent, including, for example, claim 1. The special features include, for example, the method recited in claim 1, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the '053 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

81.     Defendants have had knowledge of the '053 patent at least as of the date when they were notified of the filing of this action.

82.     Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights.

83.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

84.     Since at least the time of receiving the original Complaint in this matter, Defendants' direct and indirect infringement of one or more claims of the '053 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

85.     Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

86.    Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of the '053 patent.  Defendants' actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

87.    Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

88.    WHEREFORE, Liberty Access requests that the Court find in its favor and against Defendants, and that the Court grant Liberty Access the following relief:

a.    Judgment that one or more claims of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or all others acting in concert therewith;

b.    A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the claims of the Asserted Patents, and; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents, and by such entities;

c.    Judgment that Defendants account for and pay to Liberty Access all damages to and costs incurred by Liberty Access because of Defendants' infringing activities and other conduct complained of herein;

d.   Judgment that Defendants' infringement of the Asserted Patents be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award Liberty Access its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>February 22, 2024</u>       Respectfully submitted,

By: <u>/s/ C. Matthew Rozier</u>

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH, PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH, PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (737) 295-0876
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, GA 30312
Telephone (404) 564-1866
Email: jim@rhmtrial.com

**Attorneys for Plaintiff**
***LIBERTY ACCESS TECHNOLOGIES LICENSING LLC***

*Admitted to the Eastern District of Texas

**List Of Supportive Links**

1. U.S. Patent No. 9,373,205, USPTO.GOV,
   https://patentcenter.uspto.gov/applications/14603434,
   https://ppubs.uspto.gov/pubwebapp/external.html?q=9,373,205.pn.&db=USPAT.
2. U.S. Patent No. 10,657,747, USPTO.GOV,
   https://patentcenter.uspto.gov/applications/16034278,
   https://ppubs.uspto.gov/pubwebapp/external.html?q=10,657,747.pn.&db=USPAT.
3. U.S. Patent No. 11,443,579, USPTO.GOV,
   https://patentcenter.uspto.gov/applications/17657752,
   https://ppubs.uspto.gov/pubwebapp/external.html?q=11,443,579.pn.&db=USPAT.
4. U.S. Patent No. 11,217,053, USPTO.GOV,
   https://patentcenter.uspto.gov/applications/16847719,
   https://ppubs.uspto.gov/pubwebapp/external.html?q=11,217,053.pn.&db=USPAT.
5. WYNDHAM HOTEL & RESORTS, https://www.wyndhamhotels.com/wyndham-mobile-app.

6.  Wyndham Digital Key, OPENKEY, https://www.openkey.co/lp-wyndham-digital-key/.