# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| LIBERTY ACCESS TECHNOLOGIES LICENSING LLC, | ) ) ) ) |
| Plaintiff, | ) Case No. 2:24-cv-00125-JRG ) |
| v. | ) ) JURY TRIAL DEMANDED |
| WYNDHAM HOTELS & RESORTS, INC. and WYNDHAM HOTEL GROUP, LLC, | ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' MOTION TO STAY PENDING FINAL RESOLUTION OF OPENKEY'S DECLARATORY JUDGMENT ACTION**

# **TABLE OF CONTENTS**

                                                                                                                                           **Page**

I.    INTRODUCTION ....................................................................................................... 1

II.   STATEMENT OF FACTS ......................................................................................... 2

III.  LEGAL STANDARD ................................................................................................ 4

IV.  ARGUMENT .............................................................................................................. 6

        A.    The Customer Suit Exception Factors Favor Staying This Case ............................ 6

               1.    Wyndham Is a Peripheral Defendant of the True Defendant
                     OpenKey ................................................................................................... 6

               2.    Wyndham Agrees to Be Bound by the Outcome in the OpenKey
                     Suit ........................................................................................................... 8

               3.    OpenKey Is the Only Source of the Accused Wyndham Product .............. 9

        B.    The Traditional Stay Factors Favor Staying This Case as Well ........................... 10

               1.    Liberty Will Not Be Harmed or Unduly Prejudiced by a Stay ................. 10

               2.    A Stay Will Simplify the Issues and Promote Judicial Economy ............. 11

               3.    This Case Remains in its Earliest Stages ................................................. 12

V.    Conclusion ................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ASSA Abloy AB et al. v. John Kasha et al.*,
    No. 1:23-mc-00029, Dkt. 1 (E.D. Va. Oct. 27, 2023)...................................................................4

*ASSA Abloy AB et al. v. John Kasha et al.*,
    No. 1:23-mc-00029, Dkt. 6 (E.D. Va. Nov. 20, 2023) ..................................................................4

*CyWee Grp. Ltd. v. Huawei Device Co.*,
    No. 2:17-cv-495-WCB, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018) ..............................7, 11

*In re Dell Inc.*,
    600 F. App'x 728 (Fed. Cir. 2015) ...............................................................................................5

*Glenayre Elecs., Inc. v. Jackson*,
    443 F.3d 851 (Fed. Cir. 2006).......................................................................................................8

*In re Google Inc.*,
    558 F. App'x 988 (Fed. Cir. 2014) .............................................................................5, 7, 8, 11

*In re Intel Corp.*,
    841 F. App'x 1992 (Fed. Cir. 2020)............................................................................................4

*Kahn v. Gen. Motors Corp.*,
    899 F.2d 1078 (Fed. Cir. 1989).....................................................................................................5

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990)........................................................................................2, 5, 6, 8

*Liberty Access Techs. Licensing LLC v. ASSA ABLOY et al.*,
    No. 2:22-cv-00507, Dkt. 78 (E.D. Tex. Nov. 20, 2023) ..............................................................4

*Network Sys. Techs., LLC. v. Samsung Elecs. Co., Ltd.*,
    No. 2:22-cv-00481-JRG, 2023 WL 7649372 (E.D. Tex. Nov. 14, 2023) ....................... *passim*

*In re Nintendo Co.*,
    544 F. App'x 934 (Fed. Cir. 2013) ..............................................................................................7

*In re Nintendo of Am., Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014).....................................................................................................1

*OpenKey, Inc. v. Liberty Access Techs. Licensing LLC*,
    No. 1:24-cv-01079-PTG-LRV, Dkt. 1 (E.D. Va. June 20, 2024)..............................................1

*Sonrai Memory Ltd. v. LG Elecs. Inc.*,
    No. 6:21-cv-00168, 2022 WL 545051 (W.D. Tex. 2022) ........................................................7

*Spread Spectrum Screenings LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011) ................................................................................... 5, 6, 8

*St. Lawrence Commc'ns v. Apple Inc.*,
    No. 2:16-cv-82-JRG, 2017 WL 3712912 (E.D. Tex. July 12, 2017) ...........................................6

*In re Telebrands Corp.*,
    824 F.3d 982 (Fed. Cir. 2016) ......................................................................................................4

*Topia Tech., Inc. v. Dropbox, Inc.*,
    No. 6:21-cv-01373-ADA, 2022 WL 18109619 (W.D. Tex. Dec. 29, 2022) .........................8, 10

*Westport Fuel Sys. Can., Inc. v. Nissan N. Am., Inc.*,
    No. 2:21-cv-0455-JRG-RSP, 2023 WL 346807 (E.D. Tex. Jan. 20, 2023) .................... *passim*

**Other Authorities**

https://openkeyhelp.zendesk.com/hc/en-us/articles/10459325300109-OpenKey-
    App-FAQ-Hotel .........................................................................................................................9

https://openkeyhelp.zendesk.com/hc/en-us/sections/11227252575501-Wyndham-
    Hotels-Training-Documentation); ........................................................................................9, 10

https://whg.app.box.com/s/6bzgs3t0tsvn91m9k56krmjq1r930kgp ............................................7, 9

https://www.openkey.co ..................................................................................................................9

https://www.openkey.co/openkey-digital-key/ ...............................................................................9

Defendants Wyndham Hotels & Resorts, Inc. and Wyndham Hotel Group, LLC (collectively "Wyndham" or "Defendants") respectfully request that the Court stay Plaintiff Liberty Access Technologies Licensing LLC's ("Liberty Access" or "Plaintiff") case against Wyndham under the customer suit doctrine pending final resolution of OpenKey, Inc.'s ("OpenKey") declaratory judgment action against Liberty for non-infringement of U.S. Patent Nos. 9,373,205 (the "'205 patent"), 10,657,747 (the "'747 patent"), 11,217,053 (the "'053 patent"), 11,373,474 (the "'474 patent"), and 11,443,579 (the "'579 patent") (collectively the "Patents-in-Suit"). *See* Ex. 1 (*OpenKey, Inc. v. Liberty Access Techs. Licensing LLC*, No. 1:24-cv-01079-PTG-LRV, Dkt. 1 (E.D. Va. June 20, 2024)).

## I. INTRODUCTION

The case should be stayed in view of OpenKey's declaratory judgment action of non-infringement against Liberty in the Eastern District of Virginia under the customer suit exception. Liberty's infringement theories are effectively based entirely on Wyndham's use of the OpenKey software (the "OpenKey Functionality"), i.e., OpenKey produces the alleged infringing functionality, whereas Wyndham is a "mere customer." As such, resolution of OpenKey's declaratory judgment action against Liberty will likely resolve—regardless of the outcome, noninfringement or otherwise— all claims here because OpenKey is indemnifying Wyndham with respect to this patent dispute and Wyndham agrees to be bound by the outcome of OpenKey's declaratory judgment. By contrast, resolving Liberty's claims against Wyndham here has no chance of resolving Liberty's presumed counterclaims against OpenKey in the declaratory judgment. It would be inefficient and burdensome for this Court, the jury, the witnesses, and the parties to maintain this suit, while also raising the possibility of inconsistent adjudications if this case were not stayed.

The "suit by the manufacturer generally take[s] precedence," *In re Nintendo of Am., Inc.*,

1

756 F.3d 1363, 1365 (Fed. Cir. 2014), because "in reality, the manufacturer is the true defendant in the customer suit." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). Here, the "true defendant" is OpenKey, and this case should be stayed in view of the OpenKey's manufacturer declaratory judgment suit in the Eastern District of Virginia.

## II.    STATEMENT OF FACTS

On February 22, 2024, Liberty brought this action against Wyndham, asserting four patents (Dkt. 1, ¶ 1)—the '205, '747, '579, and '053 patents—and then, after amending its complaint, asserted a fifth, the '474 patent, on May 31, 2024 (Dkt. 19, ¶ 1). The Asserted Patents concern software and functionality for mobile access to hotel rooms. Dkt. 19, ¶ 18. Liberty alleges infringement by Wyndham in allowing "users to use a mobile device running the Wyndham Resort & Hotels mobile app to use the 'digital key' feature as a key to a hotel room." *Id*.

Liberty served its preliminary infringement contentions on May 15, 2024, for the first four patents and then the fifth on June 13, 2024 (Dkt. 25), nearly exclusively alleging infringement of the Asserted Patents by way of OpenKey software (the "OpenKey Functionality") (Exs. 2-6). There are no allegations that Wyndham modifies or utilizes the OpenKey Functionality beyond passthrough software. *Network Sys. Techs., LLC. v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-00481-JRG, 2023 WL 7649372, at *5 (E.D. Tex. Nov. 14, 2023) ("failure to allege that [Defendant's] modifies or adapts [the accused functionality] for use in [Defendant's] products strengthens the Court's conclusion"). In other words, besides peripheral user mobile device hardware limitations, the claim charts against Wyndham exclusively rely on information and documentation from OpenKey and the OpenKey Functionality. *See* Exs. 2-6.

Wyndham filed its Answers, Affirmative Defenses, and Counterclaims on May 21, 2024 (Dkt. 15) and June 14, 2024 (Dkt. 23), respectively, contesting the validity of the Asserted Patents and the allegations of infringement. Dkt. 23 at Counterclaim ¶ 8. With respect to invalidity,

Wyndham counterclaimed that each Asserted Patent was anticipated or obvious in view of at least one or more prior art references cited in IPR2023-00815, IPR2023-00816, IPR2023-00817, *ex parte* reexamination Control No. 96/000,367, including WO Publication WO2008/076074 A1 ("Knutsson"), U.S. Patent No. 6,385,728 B1 ("DeBry"), U.S. Patent App. Publication No. 2009/0219133 A1 ("Woodward"), U.S. Patent No. 8,730,004 B2 ("Elfström"), U.S. Patent No. 7,353,396 B2 ("Micali"), Japanese Patent Publication No. 2002/083087 ("Inoue"), WO Publication WO2001/063425 A1 ("Bröndrup"), U.S. Patent Publication No. 2009/0070272 A1 ("Jain"), U.S. Patent Publication No. 2007/0053313 A1 ("Adams"), U.S. Patent No. 7,012,503 ("Nielsen"), U.S. Patent App. Publication No. 2005/0021954 A1 ("Kung"), WO Publication WO 2006/101614 A1 ("Buckingham"), U.S. Patent No. 8,635,462 ("Ullmann"), and/or U.S. Patent App. Publication No. 2009/0173266 ("Barnes"). Dkt. 23 at Counterclaim ¶¶ 14, 24, 34, 44, 55. Wyndham likewise counterclaimed that it, the Wyndham accused products, and, to the best of its knowledge, the implicated OpenKey Functionality, did not infringe any of the claims of the Asserted Patents and that Liberty failed to meet each and every element recited in the claims. *Id.* at Counterclaim ¶¶ 20, 30, 40, 50, 60.

On June 20, 2024, less than a week later, OpenKey filed a declaratory judgment action of non-infringement in the Eastern District of Virginia, alleging that the OpenKey Functionality does not infringe the claims of the Asserted Patents. *See* Ex. 1, ¶¶ 43-54. The OpenKey declaratory judgment complaint identified this case and Wyndham as a customer of the OpenKey Functionality. *Id.*

Besides key discovery from OpenKey, OpenKey further identified additional sources of likely relevant discovery, either within the Eastern District of Virginia or within its subpoena power. *Id.*, ¶¶ 34-42. For instance, for Liberty's first patent litigation campaign in 2018 against

3

Virginia-resident Hilton Worldwide Holdings Inc. ("Hilton"),[1] OpenKey contends that there "is at least a reasonable inference that Liberty, the alleged inventors, and Liberty's attorneys learned about material [] references during the Hilton litigation, and then actively chose not to disclose them during the reexamination to secure amended claims" to reassert the patents in a second patent litigation campaign against Marriott International, Inc. ("Marriott")[2] and ASSA ABLOY AB ("ASSA ABLOY").[3] Ex. 1, ¶¶ 34-42. Liberty, for its part, denies possession of such discovery, thereby necessitating discovery from its affiliated Virginia-based prosecution counsel.[4]

## III.   LEGAL STANDARD

A district court has the inherent authority to regulate its docket—including the power to stay. *In re Intel Corp.*, 841 F. App'x 1992, 194 (Fed. Cir. 2020); *see also Network Sys.*, 2023 WL 7649372, at *2; *Westport Fuel Sys. Can., Inc. v. Nissan N. Am., Inc.*, No. 2:21-cv-0455-JRG-RSP, 2023 WL 346807, at *1 (E.D. Tex. Jan. 20, 2023).

The first to file "stands for the [commonsense] proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases," and where the "overlap is complete or nearly complete, the usual rule is for the court of first jurisdiction to resolve the issues." *In re Telebrands Corp.*, 824 F.3d 982, 984 (Fed. Cir. 2016). However, subsequent litigation may take priority when it is initiated by or against the manufacturer or sole

---

[1] No. 1:18-cv-03627 (N.D. Ill.).
[2] No. 2:22-cv-00318 (E.D. Tex.).
[3] No. 2:22-cv-00507 (E.D. Tex.).
[4] *See* Ex. 7 at 5-6 (ASSA ABLOY Motion to Compel Production, *ASSA Abloy AB et al. v. John Kasha et al.*, No. 1:23-mc-00029, Dkt. 1 (E.D. Va. Oct. 27, 2023)); *see also* Ex. 8 at 2-4 (ASSA ABLOY Motion to Compel Production Reply, *ASSA Abloy AB et al. v. John Kasha et al.*, No. 1:23-mc-00029, Dkt. 6 (E.D. Va. Nov. 20, 2023)). It is further noted that, after denying possession of material references learned during the Hilton litigation, Liberty then demanded the destruction of evidence produced directly by one of the named inventors of the Asserted Patents. *See* Ex. 9 at 1-2 (ASSA ABLOY Motion for Protective Order, *Liberty Access Techs. Licensing LLC v. ASSA ABLOY et al.*, No. 2:22-cv-00507, Dkt. 78 (E.D. Tex. Nov. 20, 2023)).

supplier of the goods accused of infringement in the prior suit. *In re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015) (citing *Katz*, 909 F.2d at 1464. The exception is "based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse." *Spread Spectrum Screenings LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (citing *Kahn v. Gen. Motors Corp.*, 899 F.2d 1078, 1081 (Fed. Cir. 1989)). "Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Id*. at 1357.

To warrant a stay of the customer suit, the case involving the manufacturer "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Id*., at 1358. "[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy." *Id*. at 1357. Courts are instructed to avoid wasted resources through a "flexible approach, including staying proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 558 F. App'x 988, 991 (Fed. Cir. 2014). Factors commonly considered include: (1) whether the customer in the first filed action is a mere reseller of products manufactured or supplied by the party in the second filed action, (2) whether the customer in the first filed action has agreed to be bound by any decision in the second filed action, and (3) whether the party in the second filed action is the only source of the allegedly infringing activity or product. *Westport*, 2023 WL 346807, at *1. Here, all three factors point towards a stay of this case, involving a customer, Wyndham, of the accused products, which are provided by OpenKey.

Additionally, the Court considers traditional stay factors including: (1) any undue prejudice or tactical disadvantages to the nonmovant, (2) the simplification of the issues and trial, and (3) the

5

procedural state of the action subject to a stay. *Id*. at *2. Likewise, all three traditional factors weigh in favor of a stay here.

## IV.     ARGUMENT

Courts generally find that a customer who merely incorporates a manufacturer's product into its own is a "mere reseller." *See, e.g.*, *Katz*, 909 F.2d at 1460-61, 1464. And, in such instances, where customers are sued, this Court looks to determine whether adjudication of the claims specific to the manufacturer would potentially dispose of the claims pertaining to the customer, and whether those customer issues are peripheral. *St. Lawrence Commc'ns v. Apple Inc.*, No. 2:16-cv-82-JRG, 2017 WL 3712912, at *1 (E.D. Tex. July 12, 2017) (citations omitted). The claims against the manufacturer "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum*, 657 F.3d at 1358 (citations omitted). Here, OpenKey's manufacturer declaratory judgment action is likely to resolve the "major issues," thus satisfying both the customer suit exception and traditional stay factors.

### A.     The Customer Suit Exception Factors Favor Staying This Case

All three customer suit exception factors—(1) whether the customer in the first filed action is a mere reseller of products manufactured or supplied by the party in the second filed action, (2) whether the customer in the first filed action has agreed to be bound by any decision in the second filed action, and (3) whether the party in the second filed action is the only source of the allegedly infringing activity or product—weigh in favor of staying this case.

#### 1.     Wyndham Is a Peripheral Defendant of the True Defendant OpenKey

The first customer suit factor favors a stay. In its complaint and infringement contentions, Liberty makes clear that its real dispute is with OpenKey, not Wyndham, and that OpenKey is equivalent to a "reseller" of the OpenKey Functionality. *See* Exs. 2-6; *see also Network Sys.*, 2023 WL 7649372, at *5.

Each element of the asserted claims purportedly corresponds to internal features of the OpenKey Functionality, not to Wyndham services. And, other than the preamble, nonlimiting language pertaining to peripheral mobile device hardware and Wyndham's generic app, none of the charts map claim elements to any unique component developed by Wyndham. Other than those peripheral nods, the infringement theories pertain exclusively to OpenKey Functionality and OpenKey support. No other functionality besides the OpenKey Functionality is accused—Wyndham is alleged to only infringe to the extent it implements the OpenKey Functionality. Wyndham did not design the OpenKey Functionality, nor is it involved in its design—in fact, Liberty's cited sources clearly state that Wyndham's Hotel and Resorts Mobile App Digital Key is "Hosted by OpenKey." *See, e.g.*, Ex. 2 at 4 (citing https://whg.app.box.com/s/6bzgs3t0tsvn91m9k56krmjq1r930kgp). And, critically, Liberty does not allege that Wyndham alters or customizes the OpenKey Functionality. *See In re Google Inc.*, 558 F. App'x 988, 990 (Fed. Cir. 2014) (the infringement claims rely "exclusively on the underlying functionalities provided" by OpenKey). The exclusive focus of Liberty's allegations here are the OpenKey Functionality, and "without which the alleged infringement by [Wyndham] would not be possible." *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-cv-495-WCB, 2018 WL 4002776, at *6 (E.D. Tex. Aug. 22, 2018).

As mere "resellers," i.e., customers implementing the OpenKey Functionality, Wyndham "will have very little to offer in the way of evidence regarding the substantive aspects of the infringement case," and they "can add little to nothing regarding how the technology underlying the accused products works." *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013). That Wyndham incorporates the OpenKey Functionality into its generic mobile app does not favor litigating separate suits, especially given the nearly complete overlap in issues. *See Google*, 558

F. App'x at 990; *Sonrai Memory Ltd. v. LG Elecs. Inc.*, No. 6:21-cv-00168, 2022 WL 545051, *4 (W.D. Tex. 2022) (finding customer suit exception applies to "downstream products").

Resolving Liberty's presumed claims against OpenKey has an overwhelmingly high likelihood of resolving all claims against Wyndham, whereas, resolving Liberty's claims against Wyndham has little chance of resolving anything with respect to OpenKey. *See Topia Tech., Inc. v. Dropbox, Inc.*, No. 6:21-cv-01373-ADA, 2022 WL 18109619, at *5 (W.D. Tex. Dec. 29, 2022) (holding that "the issues will be greatly simplified by first resolving the claims against [the manufacturer]"). If OpenKey is successful in establishing that its products are noninfringing, then Liberty's claims here against Wyndham would be moot, a possibility by itself sufficient to warrant a stay since it "resolve[s] . . . 'major issues,'" (*Spread Spectrum*, 657 F.3d at 1358), and would result in "substantial savings of litigation resources" (*Google*, 558 F. App'x at 991). Even if Liberty obtains a judgment in favor against OpenKey, then it will have exhausted its rights as a patent holder and would be precluded from collecting duplicative damages. *Network Sys.*, 2023 WL 7649372, at *7 (citing *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006)). And, even if ancillary issues were to remain, resolution of the declaratory judgment would still significantly simplify the issues here. *See Katz*, 909 F.2d at 1464; *see also Westport*, 2023 WL 346807, at *3.

OpenKey has relevant information, and Liberty can seek it directly from OpenKey through discovery in the declaratory judgment case (rather than attempt third party discovery in this lawsuit). Thus, this factor favors a stay.

### 2. Wyndham Agrees to Be Bound by the Outcome in the OpenKey Suit

The second customer suit factor also favors a stay. OpenKey is indemnifying Wyndham with respect to this patent dispute. And OpenKey seeks a declaratory judgment that neither OpenKey nor "certain software, hardware, and functionality implemented by [OpenKey] for

8

mobile access to hotel rooms" infringed, literally or under the doctrine of equivalents, any claim of the Patents-in-Suit. *See, e.g.*, Ex. 1, ¶¶ 55-104. Presumably, Liberty will counterclaim, allege infringement, and seek damages from OpenKey. If OpenKey wins, then there is no liability (either by OpenKey or by Wyndham). If Liberty wins, it will recover damages from OpenKey, which will necessarily include any damages associated with the Accused Wyndham Products here. Critically, Liberty does not practice the Patents-in-Suit, so it has no ability to seek lost profits damages from either OpenKey or Wyndham and it can recover only a reasonable royalty on any infringing product once. Either way the declaratory judgment concludes, the litigation here will be fully and finally resolved, and Wyndham agrees to be bound by any decision in the OpenKey action. *See Network Sys.*, 2023 WL 7649372, at *6 (noting that the customer suit exception does not require "resolution of *all* issues").

### 3. OpenKey Is the Only Source of the Accused Wyndham Product

The third customer suit factor likewise favors a stay. As is shown in its complaints and infringement contentions (Exs. 2-6), the only accused functionality that Liberty alleges infringes is the OpenKey Functionality. *See Network Sys.*, 2023 WL 7649372, at *8. Wyndham did not design the OpenKey Functionality—in fact, Liberty's cited sources clearly state that Wyndham's Hotel and Resorts Mobile App Digital Key is "Hosted by OpenKey." *See, e.g.*, Ex. 2 at 5 (citing https://whg.app.box.com/s/6bzgs3t0tsvn91m9k56krmjq1r930kgp). And Liberty cites only six total sources for its infringement theories, five pertaining to the OpenKey Functionality and OpenKey's own websites, while the sixth is the generic information about Wyndham's peripheral mobile app. For instance, OpenKey further provides its customers, such as Wyndham, "everything [they] need for easy, reliable digital key," such as "seamless contactless [digital key] technology," the "OpenKey SDK," and "digital key hardware." *See, e.g.*, *id.* at 5 (citing https://www.openkey.co/lp-wyndham-digital-key/); *see also id.* at 3. And OpenKey offers

9

"[c]omplete control over the guest experience," providing its customers with "training for a frictionless setup." *See, e.g.*, *id.* at 6 (citing https://www.openkey.co/openkey-digital-key/). OpenKey further provides Wyndham-specific training documentation and provides further FAQ support. *See, e.g.*, *id.* at 8 (citing https://openkeyhelp.zendesk.com/hc/en-us/articles/10459325300109-OpenKey-App-FAQ-Hotel and https://openkeyhelp.zendesk.com/hc/en-us/sections/11227252575501-Wyndham-Hotels-Training-Documentation); *see also id.* at 6.

Thus, the Court should stay this case to allow OpenKey's declaratory judgment case to effectively resolve Liberty's infringement allegations.

### B. The Traditional Stay Factors Favor Staying This Case as Well

All three traditional stay factors—(1) any undue prejudice or tactical disadvantages to the nonmovant, (2) the simplification of the issues and trial, and (3) the procedural state of the action subject to a stay—also weigh in favor of a stay.

#### 1. Liberty Will Not Be Harmed or Unduly Prejudiced by a Stay

Staying this case will not prejudice Liberty. Liberty's claims against Wyndham are peripheral to the issues that will be resolved in the OpenKey declaratory judgment—which Wyndham stipulates to be bound by. *See above* Section IV.A.2. Any relief Liberty obtains against OpenKey will exhaust its damages against Wyndham. *Id*. Accordingly, if Liberty prevails against OpenKey, it will recover fully, finally, and with no delay. A stay for Wyndham here will not delay Liberty's relief.

Additionally, because the relevant information, knowledge, and experience are solely in the hands of OpenKey and its employees, "discovery directly from [OpenKey] will . . . yield better evidence because [OpenKey] . . . has greater access to evidence regarding the functionality" than Wyndham, its customer. *Westport*, 2023 WL 318466, at *3; *see also Topia Tech.*, 2022 WL

18109619, at *4 (a stay "does not significantly delay [Plaintiff] from litigating the question of infringement" and the "bulk of the relevant evidence comes from the supplier . . . not the customer").

Finally, "as to prejudice or tactical disadvantages, the median time to trial or dispositive outcome in the Eastern District of Virginia is comparable to that in the Eastern District of Texas," and thus a "timely resolution of the major issues is not prevented by a stay of this suit." *Westport*, 2023 WL 318466, at *3.

### 2. A Stay Will Simplify the Issues and Promote Judicial Economy

A stay would dramatically simplify the issues here. The burden on the Court's resources would be significantly reduced by eliminating unnecessary hearings and a liability trial for Wyndham. *See Westport*, 2023 WL 318466, at *4 (further noting that convention here is negotiating a single license at a single rate). The declaratory judgment suit will resolve infringement definitively, and it would apply to this case. If that action results in a finding of non-infringement, that would be dispositive of this action; whereas if it finds the opposite, at the very least, one of the key issues in this case would be already resolved. Again, presumably when Liberty counterclaims, the declaratory judgment suit will also definitively resolve all issues of liability and damages. On the other hand, if no stay were entered, this Court would be litigating largely the same issues as the Eastern District of Virginia court—the forum with extensive discovery and subpoena power over relevant sources of evidence (*see above* Section II)—resulting in judicial inefficiency, waste, and the potential for conflicting results. *See Google*, 588 F. App'x at 990. Additionally, there would no need for duplicative discovery by subpoena or resolution of unnecessary discovery disputes. *See CyWee*, 2018 WL 4002776, at *3-4.

### 3. This Case Remains in its Earliest Stages

This case is in its earliest stages. Wyndham has answered, the parties exchanged initial disclosures, and Liberty served its initial infringement contentions. Otherwise, the rest of this case remains—both the claim construction hearing (May 15, 2025) and the close of fact discovery (June 30, 2025) -- are nearly a year away, with a pretrial conference set for October 14, 2025. Dkt. 25. This case is "clearly within its infancy." *Westport*, 2023 WL 318466, at *3.

## V. Conclusion

Wyndham is accused in this case merely as a customer of OpenKey. OpenKey's declaratory judgment action will resolve most, if not all, of the issues in this case, and perhaps more. And, all the stay factors—both the customer suit exception and traditional factors—support staying this case against a customer, Wyndham. Wyndham has agreed to be bound by the declaratory judgment case, and OpenKey is indemnifying Wyndham with respect to this case. Thus, Wyndham respectfully requests that the Court stay this case pending resolution of the declaratory judgment OpenKey filed against Liberty.

Dated: July 1, 2024    By:    */s/ J. Thad Heartfield*
J. Thad Heartfield
State Bar No. 09346800
thad@heartfieldlawfirm.com
M. Dru Montgomery
State Bar No. 24010800
dru@heartfieldlawfirm.com
**THE HEARTFIELD LAW FIRM**
2195 Dowlen Road
Beaumont, Texas 77706
Telephone: (409) 866-3318
Facsimile: (409) 866-5789

David M. Stein
Texas Bar No. 00797494
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane #301
Newport Beach, CA 92663
Telephone: (949) 887-4600

*COUNSEL FOR DEFENDANTS, WYNDHAM HOTELS & RESORTS, INC. and WYNDHAM HOTEL GROUP, LLC*

## CERTIFICATE OF SERVICE

I certify that on July 1, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

By: */s/ J. Thad Heartfield*
J. Thad Heartfield

**CERTIFICATE OF CONFERENCE**

I hereby certify that on July 1, 2024, that Defendants complied with the requirements of Local Rule CV-7(h). This motion is opposed. Specifically, counsel for Wyndham conferred with counsel for Liberty on July 1, 2024, by telephone to discuss possible resolution of the issues in this motion. The parties were not able to come to agreement on the above motion, and as such, the meet and confer process ended in an impasse.

> */s/ J. Thad Heartfield*
> J. Thad Heartfield