**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LIBERTY ACCESS TECHNOLOGIES LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> WYNDHAM HOTELS & RESORTS, INC. and WYNDHAM HOTEL GROUP, LLC, <br><br> Defendants. | Civil Action No. 2:24-cv-00125-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING FINAL RESOLUTION OF OPENKEY'S DECLARATORY JUDGMENT ACTION [DKT. NO. 32]**

Plaintiff Liberty Access Technologies Licensing LLC ("Liberty Access" or "Plaintiff") hereby opposes the Motion to Stay Pending Final Resolution Of Openkey's Declaratory Judgment Action (Dkt. No. 32, the "Motion") filed by Defendants Wyndham Hotels & Resorts, Inc. and Wyndham Hotel Group, LLC (hereafter, "Wyndham" or "Defendants").

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND ....................................................................................... 3

    A.    Liberty's Infringement Action Against Wyndham In Eastern District of Texas ............... 3

    B.    Declaratory Judgment Action for Non-Infringement of OpenKey Component in Eastern District of Virginia ........................................................................................... 6

III.    ARGUMENT .................................................................................................................. 8

    A.    The Accused Products Include Components And Functionalities Provided By Wyndham Defendants. ......................................................................................................... 9

    B.    Wyndham is Not a Mere Reseller of an "Off-The-Shelf" Product ................................. 10

    C.    Defendants' Agreement to be Bound is Not Dispositive of All Issues ........................... 12

    D.    The Traditional Stay Factors Also Weigh Against a Stay ................................. 13

IV.     CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*A.P.T., Inc. v. Quad Envtl. Techs. Corp.*,
   698 F. Supp. 718 (N.D. Ill. 1988) ............................................................................. 15

*Carucel Invs., Ltd. P'ship v. Novatel Wireless, Inc.*,
   No. 16-cv-118-H-KSC, 2016 U.S. Dist. LEXIS 192609 (S.D. Cal. May 13, 2016) ............... 15

*Clinton v. Jones*,
   520 U.S. 681 (1997) ..................................................................................................... 7

*Corydoras Techs., LLC v. Best Buy Co.*,
   No. 2:19-cv-00304-JRG-RSP, 2020 U.S. Dist. LEXIS 45578 (E.D. Tex. March 16, 2020) ..... 8
*CyWee Grp. Ltd. V. Huawei Device Co.*,
   2018 U.S. Dist. LEXIS 142173 (E.D. Tex. Aug. 22, 2018) ........................................... 7, 8, 13

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
   2016 U.S. Dist. LEXIS 55205 (E.D. Tex. April 26, 2016) ..................................................... 15

*In re Google Inc.*,
   588 F. App'x 988 (Fed. Cir. 2014) ............................................................................. 12

*In re. Laughlin Prods., Inc.*,
   265 F. Supp. 2d 525 (E.D. Pa. May 28, 2003) ..................................................................... 15

*Innovative Automation, LLC v. Audio Video & Video Labs, Inc.*,
   No. 6:11-cv-234 LED-JDL, 2012 U.S. Dist. LEXIS 114503 (E.D. Tex May 30, 2012) ......... 11

*JoeScan, Inc. v. LMI Techs., Inc.*,
   No. C07-5323RJB, 2007 U.S. Dist. LEXIS 65498 (W.D. Wash. Sep. 5, 2007) ..................... 15

*Kahn v. General Motors Corp.*,
   889 F.2d 1078 (Fed. Cir. 1989) ............................................................................. 7, 8

*Kaneka Corp. v. Zhejiang Med. Co.*,
   No. CV 11-02389 SJO (SHSx), 2016 U.S. Dist. LEXIS 184735 (C.D. Cal. July 6, 2016) ..... 15

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990) ............................................................................. 7, 8

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ..................................................................................................... 7

*Liberty Access Technologies Licensing LLC v. ASSA ABLOY AB, et al*,
   No. 2:22-cv-00507-JRG, Dkt. No. 76 (E.D. Tex. November 20, 2023) ................................... 12

*Liberty Access Technologies Licensing LLC v. ASSA ABLOY AB, et al*,
  No. 2:22-cv-00507-JRG, Dkt. No. 87 (E.D. Tex. December 13, 2023) ................................... 12

*Liberty Access Technologies Licensing LLC, v. Marriott International, Inc.*,
  No. 2:22-cv-00318-JRG, Dkt. No. 57-1 (E.D. Tex.) ................................................................ 1

*Luv N' Care, Ltd. v. Jackel Int'l Ltd.*,
  No. 2:14-cv-00855-JRG, 2014 U.S. Dist. LEXIS 158293 (E.D. Tex Nov. 10, 2014) ............. 15

*NFC Tech, LLC v. HTC Am., Inc.*,
  2015 U.S. Dist. LEXIS 29573, 2015 WL 10691111 (E.D. Tex. Mar. 11, 2015) ................. 8, 11

*OpenKey, Inc., v. Liberty Access Technologies Licensing, LLC*,
  1:24-cv-01079, Dkt. No. 1 (E.D. Va. June 20, 2024) ................................................................ 1

*Parallel Networks Licensing, LLC v. Superior Turnkey Sols. Grp., Inc.*,
  Civil Action No. 4:19-cv-516, 2020 U.S. Dist. LEXIS 76750 (E.D. Tex. May 1, 2020)......... 15

*RegenLab USA LLC v. Estar Techs. Ltd.*,
  No. 16-cv-08771 (ALC), 2017 U.S. Dist. LEXIS 131495 (S.D.N.Y. Aug. 17, 2017) ............. 15

*Rembrandt Wireless Tech., LP v. Apple, Inc.*,
  No. 2:19-cv-00025-JRG, 2019 U.S. Dist. LEXIS 205698 , 2019 WL 6344471 (E.D. Tex. Nov.
  27, 2019) ....................................................................................................................... 14, 15

*Sas Inst., Inc. v. World Programming Ltd.*,
  No. 2:18-CV-00295-JRG, 2019 U.S. Dist. LEXIS 229850 (E.D. Tex. Apr. 4, 2019) ............. 15

*Shifferaw v. Emson USA,* No. 2:09-cv-54,
  2010 U.S. Dist. LEXIS 25612, 2010 WL 1064380 (E.D. Tex. Sept. 30, 2005)...................... 10

*Sonrai Memory Ltd. v. Samsung Elecs. Co.*,
  No. 6:21-cv-00169-ADA, 2022 U.S. Dist. LEXIS 32294 (W.D. Tex. Feb. 24, 2022) ........... 11

*Tegic Commc'ns Corp. v. Bd. Of Regents of Univ. of Texas Sys.*,
  458 F.3d 1335 (Fed. Cir. 2006)............................................................................................ 7, 10

*Viavi Sols. Inc. v. Zhejiang Crystal-Optech Co Ltd.*,
  No. 2:21-cv-00378-JRG, 2022 U.S. Dist. LEXIS 205106 (E.D. Tex. November 10, 2022) ..... 8

## I.    INTRODUCTION

Defendants cannot satisfy the touchstone of the customer-suit exception: whether resolving the manufacturer litigation would dispose of claims against a customer.  The Motion is premised on a recently-filed declaratory judgment action filed by OpenKey, Inc. ("OpenKey"), a supplier of Defendants, in the Eastern District of Virginia.  *See OpenKey, Inc., v. Liberty Access Technologies Licensing, LLC*, 1:24-cv-01079 (E.D. Va. June 20, 2024) (hereafter, the "OpenKey Litigation"). But the Motion largely side steps the fact that OpenKey provides only certain aspects of the functionality and systems accused in this case while certain limitations of each Asserted Patent are performed by Wyndham's own products.  This includes key functionalities overlooked by Defendants' Motion, including, at least, Wyndham's hotel reservation systems and hotel management platforms, and of course, the Wyndham Hotels & Resorts Mobile Application ("Wyndham Mobile App") itself.

These facts are important and support a denial of the Motion.  Indeed, this Court has already considered and rejected a nearly identical motion to stay in a prior litigation involving Liberty. *See* Joint Notice of Redaction [Order Denying Marriott's Motion to Stay], Dkt. No. 57-1, *Liberty Access Technologies Licensing LLC, v. Marriott International, Inc.*, No. 2:22-cv-00318-JRG (E.D. Tex. May 22, 2023) ("Marriott Litigation"), attached herein as **Exhibit A** ("Marriott Order"). Wyndham knows full well of that proceeding and the Court's order because the same counsel representing OpenKey in the Declaratory Judgment Action (and presumably ghost writing the Motion) was counsel for the declaratory judgment plaintiff that formed the basis of the motion to stay in the Marriott Litigation.  The result here should be the same as that in the Marriott Litigation because, contrary to Wyndham's assertions, any decision that might issue from the *OpenKey* litigation will not dispose of the infringement claims against Defendants in this case for at least four reasons.

First, Defendants provide ***key components and functionalities*** of the Accused Products, e.g., the Wyndham Mobile App itself and Wyndham's hotel reservation systems and management platforms.  These functionalities are not only specific and essential to Defendants' use of the digital room key systems but are also central to the direct infringement allegations against Defendants in this action.  Defendants' systems and functionalities are required to satisfy key limitations of claims asserted in this case.  Liberty is therefore entitled to prosecute its claims for infringement against Defendants *independently from OpenKey*.

Second, Defendants are ***not mere resellers*** of the Accused Products.  To the contrary, Defendants are directly involved in the design, operation, and use of the Accused Products, and they direct and control their franchisees' use of the Accused Products.  The Wyndham Mobile App and related Wyndham platforms and systems, as used by Defendants, directly provide functionalities accused of infringement.  A court and/or jury may determine that, for reasons wholly or partially unique to Defendants, they infringe while OpenKey does not.  Defendants' liability is therefore independent of OpenKey and will not be resolved by the OpenKey litigation.

Third, no evidence exists to suggest that the OpenKey litigation will resolve Defendants' ***invalidity counterclaims*** in this litigation.  *See* Dkt. No. 13; Dkt. No. 23.  OpenKey did not plead for declaratory judgment of invalidity of any of the Asserted Patents.  *See* Dkt. 32-1 ("OpenKey DJ-Complaint").

Fourth, the facts of this case weigh against a stay in light of the ***traditional stay factors***.  Staying this action would not promote efficiency or judicial economy, and typical circumstances warranting application of the customer-suit exception are absent here.  A stay would unduly delay resolution of infringement liability unique to Defendants' direct and indirect use of the accused products and invalidity claims in this action.  The policy justification for invoking the customer-

suit exception is therefore absent here.

For these reasons and those more fully set forth below, the Court should deny the Motion.

## II.  FACTUAL BACKGROUND

### A.  Liberty's Infringement Action Against Wyndham In Eastern District of Texas

On September 24, 2024, Liberty filed its Complaint against the Wyndham Defendants, alleging that Defendants infringe the Asserted Patents[1] by making, using, providing, and instructing others to use the Accused Products.  *See* Dkt. No. 1 ¶ 1; *see also* Dkt. No. 19 ¶¶ 1, 18, 19, 26, 43, 60, 77, 94.  On May 31, 2024, Liberty filed its First Amended Complaint, adding to its allegations Defendants' infringement of claims of the Ex Parte Reexamination Certificate issued for U.S. Patent No. 11,373,474 (the "'474 patent").  *See* Dkt. No. 19 ("FAC") at ¶¶ 1, 18, 19, 26, 43, 60, 77, 94.

The Accused Products include the Wyndham Mobile App and its "digital key" features which allow Wyndham guests to access their hotel rooms and other locked areas of the hotel using a mobile device along with the associated lock hardware and software in various Wyndham hotels ("Accused Products").  *See* Dkt. No. 19 ¶¶ 18, 19, 28, 45, 62, 79, 96; *see also* **Exhibit B**.

Defendant Wyndham Hotel Group, LLC is the developer of the Wyndham Mobile App[2] and is a wholly owned subsidiary of Wyndham Hotels & Resorts, Inc. (*see* Dkt. No. 24).  Based on public information, the Wyndham Mobile App "currently has over 5.5 million downloads" and

---

[1]  Liberty asserted the following patents in its original Complaint U.S. Patent Nos. 9,373,205 ("'205 patent"), 10,657,747 ("'747 patent"), 11,443,579 ("'579 patent"), and 11,217,053 ("'053 patent") (collectively with the '474 patent, the "Asserted Patents").

[2]  *See* GOOGLE PLAY,
https://play.google.com/store/apps/details?id=com.wyndhamhotelgroup.wyndhamrewards&hl=en_US.
Defendants' digital key products and services enable guests to "receive their room key digitally via their mobile phone and use [it] throughout the duration of their stay."  WYNDHAM HOTELS,
https://corporate.wyndhamhotels.com/news-releases/wyndham-goes-high-impact-low-contact-with-new-mobile-app-introduces-lightning-book-and-in-stay-features-with-drive-to-travel-on-the-rise/ (September 24, 2020) (last visited July 10, 2024).

prioritizes low-contact features, such as the digital key technologies at issue here.[3]  For instance, the Wyndham Mobile App enables users to pair with Bluetooth devices, gain full network access inside Wyndham brand hotels, and control Near Field Communication.[4]

On April 30, 2024, Defendants asserted invalidity and noninfringement Counterclaims against each of the patents asserted in the original Complaint (*see* Dkt. No. 13), and on June 16, 2024, and, after Liberty filed the FAC, asserted invalidity and noninfringement Counterclaims against each of the Asserted Patents in this action (*see* Dkt. No. 23).

On May 15, 2024, Liberty served its Local Patent Rule 3-1 and 3-2 Disclosures for patents asserted in its original Complaint and, on June 13, 2024, amended to serve its preliminary infringement contentions for the '474 patent.  *See* Dkt. Nos. 17, 31.  Liberty's preliminary infringement contentions identify the Accused Products, the components and functionalities Defendants provide and use, and the theories of infringement asserted against Defendants.  *See* **Exhibits C–G**.  More specifically, each of the asserted method claims allege direct infringement based on the explicit acts of Defendants and their employees and/or franchisees. Likewise, the asserted system claims allege direct infringement for Defendants' and their employees and/or franchisees' use of the claimed systems by way of their provision of components, including the Wyndham Mobile App, the App's communication protocols, Wyndham reservation systems and system servers, ***in combination with*** the SDKs and BLE/Bluetooth/NFC modules that OpenKey provides.

---

[3] WYNDHAM HOTELS, https://investor.wyndhamhotels.com/news-events/press-releases/detail/256/wyndham-celebrates-2022-milestones-and-accomplishments (January 23, 2023) (last visited July 10, 2024).
[4] *See* GOOGLE PLAY, https://play.google.com/store/apps/details?id=com.wyndhamhotelgroup.wyndhamrewards&hl=en_US (Select ABOUT THIS APP, then VIEW DETAILS under "Permissions" heading).

Discovery opened in this action on May 29, 2024.[5]  *See* Dkt. No. 12.  Although Defendants have not produced a single substantive document relevant to the claims and defenses of this case, public information negates Defendants' arguments that Wyndham only provides "periphery" components accused of infringement in this action.  *See* Motion at 2, 6, 7, 9, and 10.  For example, Wyndham's own marketing materials note that, "Wyndham in recent years has invested more than $275 million in technology, helping deliver industry-first sales, marketing and digital innovations including mobile check-in/check-out, ***mobile key and more***—all while expanding its on-the-ground operational support of hotels."  *News Releases*, Wyndham Hotels, https://corporate.wyndhamhotels.com/news-releases/sam-nazarians-sbe-forms-strategic-alliance-with-wyndham-launches-new-smart-lifestyle-brand-project-hq-hotels-residences/ (January 22, 2024) (last visited July 10, 2024).  Moreover, since at least January of 2021, Defendants have been using (including *via* testing) the Accused Products, which include digital key products and services provided exclusively through the Wyndham Mobile App, along with related hardware and software independent from OpenKey.[6]

In addition to the Wyndham Mobile App itself, Defendants also provide platforms and systems with functionalities that infringe key claim limitations of asserted claims in this action, including, as one example, ***Wyndham's reservation system***.[7]  These functionalities are performed

---

[5] Liberty Access served its First Set of Interrogatories to Defendants on June 3, 2024.

[6] *See, e.g.*, Ex. B; Wyndham Hotels, https://corporate.wyndhamhotels.com/news-releases/wyndham-goes-high-impact-low-contact-with-new-mobile-app-introduces-lightning-book-and-in-stay-features-with-drive-to-travel-on-the-rise/ (September 24, 2020) (last visited July 10, 2024).

[7] *See, e.g.*, Press Release, Wyndham Hotels, https://corporate.wyndhamhotels.com/news-releases/wyndham-teams-with-amperity-to-elevate-global-marketing-capabilities/ ("Wyndham's ***mobile app and customer data platform*** both build upon the foundation of a broader, multi-year digital transformation, which in recent months has ***enabled the Company to quickly stand up new tools and offerings to help drive more business to its franchisees*** . . . .") (emphasis added). These functionalities enable customers to "contact[ Wyndham], mak[e] a reservation, participat[e] in loyalty or other programs, promotions or activities) using a variety of devices, such as a mobile phone with location tracking enabled on the phone or an App." *See* Privacy *Notice*, Wyndham Hotels, https://www.wyndhamhotels.com/about-us/privacy-notice-more-info (last updated January 30, 2024).

exclusively or in part by the Wyndham Mobile App and/or by the Defendants or their employees and/or franchisees.  Nothing in the Motion contends otherwise or asserts that OpenKey provides any aspect of Wyndham's reservation system that is required to perform various elements of the asserted claims.

Defendants themselves also direct and control initiatives "designed to help franchisees improve operating margins," for example, by directing franchisees "to upgrade existing door locks."[8]  Defendants direct and control testing of the Wyndham Mobile App.[9]

### B. Declaratory Judgment Action for Non-Infringement of OpenKey Component in Eastern District of Virginia

OpenKey is a corporation organized and existing under the laws of Texas and maintains a principal place of business at 14185 Dallas Parkway, Suite 750, Dallas, Texas 75254.  Dkt. No. 1 ¶ 4, OpenKey Litigation.   While OpenKey does have employees who live in Texas and this District,[10] to Liberty Access's knowledge, OpenKey has no facilities, operations, or employees in Virginia.  Yet, on June 20, 2024, OpenKey filed a complaint against Liberty Access in the Eastern District of Virginia seeking declaratory judgment of noninfringement of OpenKey's products and services—*which does not include functionalities specific to Wyndham at issue in this action*. *See* Dkt. No. 1, OpenKey Litigation.  OpenKey did not request a declaratory judgment of invalidity against any of the Asserted Patents.  *Id.*

---

[8] WYNDHAM HOTELS, https://investor.wyndhamhotels.com/news-events/press-releases/detail/256/wyndham-celebrates-2022-milestones-and-accomplishments (January 23, 2023) (last visited July 10, 2024).
[9] *See, e.g.*, Jessica Davidson, Senior Vice President, Digital & Brand Marketing, Wyndham Hotels & Resorts, LODGING MAGAZINE, https://lodgingmagazine.com/wyndham-adds-mobile-check-in-nationwide-via-new-app/ ("Wyndham has been *testing the app* across a small group of properties to learn how to best handle potential hiccups in the user experience.") (emphasis added).  Defendants also direct and control training and onboarding at their hotel properties, enabling customers to use the Wyndham Mobile App.  *See id.* ("Wyndham's training teams have also been *actively onboarding the properties for the app and are essential to the app's rollout*.") (emphasis added).
[10] As one example, OpenKey's CEO Stephen Bodnar lives in Plano, Texas.  *See, e.g.*, OpenKey, LINKEDIN, https://www.linkedin.com/company/openkey/people/.

**LEGAL STANDARD**

"The customer suit exception is an exception to the general rule that favors the forum of the first-filed action. . . ." *CyWee Grp. Ltd. V. Huawei Device Co.*, 2018 U.S. Dist. LEXIS 142173 (E.D. Tex. Aug. 22, 2018)). "Efficiency and judicial economy are guiding principles underlying the doctrine" of the customer suit exception. *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). "[A] critical question under the customer suit exception 'is whether the issues and parties are such that the disposition of one case would be dispositive of the other.'" *Katz v. Lear Siegler*, *Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990).

Application of the customer suit exception is neither absolute nor automatic. The customer suit exception is subject to a three-factor test: (1) Whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product. *Tegic Commc'ns Corp. v. Bd. Of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

This Court has the inherent power to control its own docket, including the power to determine if a stay of proceedings is appropriate. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). How to best manage the Court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). Courts also consider three general stay factors when determining whether a stay is appropriate: (1) Whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *CyWee*, No., 2018 U.S. Dist. LEXIS 142173, 2018 WL 4002776, at *3; *see also Corydoras Techs., LLC v. Best Buy Co.*,

No. 2:19-cv-00304-JRG-RSP, 2020 U.S. Dist. LEXIS 45578, at *13-14 (E.D. Tex. March 16, 2020).

Although the factors should be approached in a flexible manner, this Court has held that "[the] most important factor bearing on whether to grant a stay in this case is the prospect that . . . will result in simplification of the issues before the Court." *Viavi Sols. Inc. v. Zhejiang Crystal-Optech Co Ltd.*, No. 2:21-cv-00378-JRG, 2022 U.S. Dist. LEXIS 205106, at *2 (E.D. Tex. November 10, 2022) (quoting *NFC Tech, LLC v. HTC Am., Inc.*, 2015 U.S. Dist. LEXIS 29573, 2015 WL 10691111, at *2 (E.D. Tex. Mar. 11, 2015) (denying motion to stay because it was impossible to determine whether the stay would likely result in simplifying the case).

In that vein, this Court has found that in a situation almost identical to the present, "the Court finds that the traditional factors weigh against a stay," based largely on the fact that "[s]taying th[e] action would materially disadvantage Liberty, who is entitled to seek timely enforcement of its intellectual property rights . . . . [and] Liberty should not have to delay enforcing its rights and risk spoliation/deterioration of evidence for the speculative benefits of avoiding discovery and narrowing issues at trial." *See* Ex. A (Marriott Order) at 12.

### III.    ARGUMENT

The general rule is that "'as a principle of sound judicial administration, the first suit should have priority,' absent special circumstances." *Kahn*, 889 F.2d at 1089.    The "primary question" under the exception "is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz*, 909 F.2d at 1463.  No such special circumstances are present here.

Staying this case will not promote the efficiency and judicial economy that the customer-suit exception is intended to address because the majority of issues in this case will not be resolved by the OpenKey litigation.

***First***, the Accused Products include functionalities provided by the Defendants, i.e., the Wyndham Mobile App and hotel management platform and reservation systems that interface with door locks and/or modules used in Wyndham hotels.  OpenKey is not the only source of the Accused Products in this litigation.  ***Second***, Defendants are not mere resellers of the Accused Products.  Instead, Defendants use the Accused Products and direct and control their franchisees in their use of the Accused Products.  Defendants' liability is therefore independent of OpenKey and will not be resolved by any holding in the OpenKey Litigation.  ***Third***, as currently pled, the OpenKey Litigation cannot resolve the invalidity counterclaims asserted here by Wyndham (*see* Dkt. No. 23) because OpenKey has not requested declaratory judgment of invalidity of any of the Asserted Patents.  ***Fourth***, the facts of this case weigh against a stay in light of the traditional stay factors.

### A.  The Accused Products Include Components And Functionalities Provided By Wyndham Defendants.

Certain claim limitations of every asserted independent claim, and thereby all claims, are performed exclusively or in part by the Wyndham Mobile App and/or Wyndham's reservation systems and servers.  *See, e.g.*, Dkt. No. 19 ¶¶ 18, 19, 26, 43, 60, 77, 94.  Tellingly, Defendants provide no analysis or evidence to support their argument that only OpenKey's infringing products are at issue in this action.  *See* Motion at 9-10.  Nor could they even if they tried.

Liberty's infringement contentions rely exclusively or in part on Defendants' reservation systems and servers to satisfy at least one claim limitation of each of the independent claims asserted in this action.  *See, e.g.*, Dkt. No. 19 ¶¶ 18, 19, 28, 45, 62, 79, 96; Ex. C (205 patent, cl. 1, 13, at pp. 11-17, 56-59), Ex. D (747 patent cl. 1, 13, at pp. 5-12, 62-75), Ex. E (579 patent cl. 1, 8, 15, 26, at pp., 10-19, 54-62, 49-54, 87-95, 146-150), Ex. F (053 patent cl. 1, at p. 6-10), Ex. G (474 patent, cl. 1, 8, 15, 26, at pp. 25-30, 72-77, 126-130, 173-178).  As another example, at least

one limitation of every asserted independent claim is performed exclusively or in part by the Wyndham Mobile App. *See, e.g.*, Dkt. No. 19 ¶¶ 18, 19, 28, 45, 62, 79, 96; Ex. C (205 patent, cl. 1, 13, at pp. 5-7, 56-59), Ex. D (747 patent cl. 1, 13, at p. 19-21, 75-79), Ex. E (579 patent cl. 1, 8, 15, 26, at pp., 8-9, 54-57, 85-87, 145-146), Ex. F (053 patent cl. 1, at p. 21-26), Ex. G (474 patent, cl. 1, 8, 15, 26, at pp. 11-13, 70-71, 108-109, 172-173).  For at least these reasons, the facts here are distinguishable from those in *Network Sys. Techs., LLC. v. Samsung Elecs. Co., Ltd.*

Defendants' liability is therefore independent of OpenKey's and cannot be resolved by any holding in the OpenKey Litigation.  As such, a court could determine that OpenKey does not infringe but nevertheless determine that the Wyndham Defendants ***do*** infringe the asserted claims. For this reason, the OpenKey litigation will not resolve all of Liberty's claims against Defendants.

### B.  Wyndham is Not a Mere Reseller of an "Off-The-Shelf" Product

The first factor of the customer-suit exception is "[w]hether the customer-defendant in the earlier-filed case is merely a reseller." *Tegic*, 458 F.3d at 1343.  Courts generally find that a patent infringement claim against a distributor or a reseller is peripheral to a claim against a manufacturer if the manufacturer is the only entity in the United States that makes and sells the only accused product to the retailers or distributors.  *Shifferaw v. Emson USA,* No. 2:09-cv-54, 2010 U.S. Dist. LEXIS 25612, 2010 WL 1064380, at *2-5 (E.D. Tex. Sept. 30, 2005).

This Court examined the "reseller" concept at length in *Innovative Automation, LLC v. Audio Video & Video Labs, Inc.*, No. 6:11-cv-234 LED-JDL, 2012 U.S. Dist. LEXIS 114503 (E.D. Tex May 30, 2012).[11]  The Court highlighted that unlike traditional "peripheral defendants," the *Innovative* defendants took "affirmative steps to integrate the accused Rimage devices into their

---

[11] The matter in *Innovative* came before the Court on a motion to consolidate, and several motions to sever and transfer. In determining the proper venue of geographically dispersed defendants, this Court echoed the core of the first factor of the customer suit exception test—whether a party is a manufacturer or a mere "reseller."

hospital network, in a manner that infringe[d] the [asserted patent]." *Id.* at 20. The court ultimately held that because the products were integrated into a system, a ruling of infringement of one defendant did not absolve the remaining defendant who integrated the product into their system.

Liberty Access has not accused Defendants of infringement for the mere resale or use of OpenKey products. Here, the Accused Products are strictly accessed through the integrated system of the Defendants. Defendants directly infringe the Asserted Patents not by "supplying the manufacturer's products to other vendors," but by Defendants' direct actions of providing a mobile application, reservations system, and associated server functionalities in combination with OpenKey's products and mandating their employees, franchisees, and customers to use the Accused Products through the integrated system. This is nowhere close to a traditional manufacturer-distributor case.

The case law cited by Defendants involves "downstream products" where the defendants played no role in, had no effect on, or had no knowledge of the development, design, or implementation of the Accused Products. None of the cases support a finding that Defendants here are mere resellers of the Accused Products. As explained above, certain limitations of every asserted independent claim are performed exclusively or in part by the Wyndham Mobile App and/or Wyndham's reservation systems and servers.[12]

Present facts are also distinguishable from the cases cited by Defendant in which policy justifications played a major role in applying the customer suit exception. For example, in *In re*

---

[12] *Compare NFC Tech., LLC v. HTC Am.*, No. 2:13-CV-01058-JRG, 2014 WL 3867963, at *2 (E.D. Tex. Aug. 5, 2014) (finding that the customer was not a "mere reseller" where "many of the claims involve not only the [manufacturer's] chip set but its combination" with the defendant's hardware), *with Sonrai Memory Ltd. v. Samsung Elecs. Co.*, No. 6:21-cv-00169-ADA, 2022 U.S. Dist. LEXIS 32294, at *9 (W.D. Tex. Feb. 24, 2022) (finding that the customer was a "mere reseller" where "the asserted claims . . . are all **apparatus claims that are being asserted exclusively against the circuitry of the [manufacturer's] Accused Chips** in the [customer's] accused products" such that infringement charts against the manufacturer and customer were identical).

*Google Inc.*, the manufacturer in question, Google, was headquartered in California, the jurisdiction of the second-filed manufacture declaratory judgment action; the accused products were also created and designed in California; and "several key witnesses able to testify to the design and development of the accused Android platform's features reside[d] near Google's headquarters,'" while none resided in Texas. *See In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014). Here, no justification for an exception may be found in "the convenience and availability of witnesses, [or the] absence of jurisdiction over all necessary or desirable parties." *Id.* ("Wise judicial administration must also take into consideration the comparative convenience of both venues for resolving the matter.").[13]

Because Wyndham is not a mere "reseller" of the Accused Products, the customer-suit exception is not applicable here.

### C. Defendants' Agreement to be Bound is Not Dispositive of All Issues.

Wyndham's agreement to be bound by the final outcome will not be dispositive of all issues in the present litigation. First, OpenKey is not seeking a judgment of invalidity against any of the

---

[13] Wyndham's assertion that OpenKey's complaint for declaratory judgment has drawn an "inference" to evidence residing in the Eastern District of Virginia does not change this fact (*see* Motion at 4), and that assertion appears to be nothing more than a self-serving allegation to make a surprising and blatantly inaccurate allegation that Liberty's counsel demanded "destruction of evidence produced directly by one of the named inventors." *See* Motion at 4 and n.4. That contention is plain wrong. The real facts are these: OpenKey's counsel in a prior litigation (representing a different client) subpoenaed the named inventors. Liberty's counsel represented those inventors for purposes of responding to the subpoena. One of those inventors inadvertently produced privileged materials to OpenKey's counsel in response to the subpoena. A clawback request was made and OpenKey's counsel refused to comply, necessitating motions practice before this very Court. *See* Liberty's Motion To Compel Destruction Of Inadvertently Produced Documents And For Sanctions Against Defendants, Dkt. No. 76, *Liberty Access Technologies Licensing LLC v. ASSA ABLOY AB, et al*, No. 2:22-cv-00507-JRG (E.D. Tex. November 20, 2023). That is obviously not an attempted "destruction of evidence," it is a valid clawback under Rule 26 and this Court's protective order in the Marriott Litigation. And that is exactly what this very Court determined when it ruled on the Motion to Compel Destruction. *See* Order Compelling Destruction, Dkt. No. 87 at 6, *Liberty Access Technologies Licensing LLC v. ASSA ABLOY AB, et al*, No. 2:22-cv-00507-JRG (E.D. Tex. December 13, 2023) ("What Defendants are not permitted to do, however, is to make their own assessment that waiver has **occurred and, on that basis, refuse to comply with this Court's orders** by retaining possession of the inadvertently disclosed materials until the Court conducts an *in camera* review at Defendants' request. Such conduct finds no support in this Court's orders.").

asserted patents, which leaves ambiguous the scope of Defendants' agreement to be bound by the OpenKey litigation.  The stipulation provides no clarity about the binding effect of non-final judgments that would streamline issues for trial and shape this Court's ultimate disposition. Therefore, even if the OpenKey ligation is resolved in favor of OpenKey, the holding is unlikely to be dispositive of all issues asserted in this action.

Second, OpenKey provides scant evidence for asserting jurisdiction over Liberty in the Eastern District of Virginia.  The Court is likely to dismiss the action for lack of jurisdiction over Liberty.

Therefore, this factor clearly weighs against granting a stay of action.

### D.  The Traditional Stay Factors Also Weigh Against a Stay

In addition to the customer suit exception-specific considerations, courts consider three traditional considerations when determining whether a stay is appropriate:  (1) Whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.  *CyWee*, No., 2018 U.S. Dist. LEXIS 142173, 2018 WL 4002776, at *3.  Wyndham's Motion ignores these factors and the factors weigh against a stay here just as they did in the Marriott Litigation.  *See* Ex. A (Marriott Order) 10-12.

First, a stay will unduly prejudice Liberty.  Liberty has a statutory right to pursue litigation against Defendants' for using and directing their franchisees, guests, and employees to use, the Accused Products.  Liberty also possesses the right to timely enforce those rights.  Should this matter be stayed, Liberty would be prejudiced by the potential spoliation of evidence and/or loss of witness testimony from Wyndham employees due to passage of time during the pendency of the OpenKey Litigation.  There would be no equitable or cost-saving justification counterbalancing these risks as there are issues specific to Wyndham that would not be dispositive in the OpenKey

Litigation.  This is the precise situation considered by this Court in the Marriott Litigation, and the Court found the first factor compelling.  *See* Ex. A (Marriott Order) at 12 ("the Court finds that the first factor—whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party—weighs against granting a stay." (citing *Rembrandt Wireless Tech., LP v. Apple, Inc.*, No. 2:19-cv-00025-JRG, 2019 U.S. Dist. LEXIS 205698, 2019 WL 6344471 at *2 (E.D. Tex. Nov. 27, 2019)).  This Court further noted that, "while the customer-suit exception will almost always result in some delay, this delay is warranted only when applying the customer-suit exception is warranted," and that "a stay would not reasonably mitigate Liberty's concerns about spoliation of evidence."  *Id.*  As noted above, the customer-suit exception is not warranted here and, in any event, there is no meaningful way to mitigate the risk of evidentiary spoliation likely to take place as this Court waits on trial and appeal in the OpenKey Litigation.

Further, the OpenKey Litigation will not resolve all issues in this litigation, including infringement by components or actions unique to Defendants and as well as Defendants' invalidity claims, which are not at issue in the OpenKey Litigation.  In cases like this, District courts routinely decline to impose stays based on the customer-suit exception where a manufacturer is potentially liable only for indirect infringement, and where the customer is accused of direct infringement. District courts also often decline to give preference to a second filed suit when major issues would not be resolved in the manufacturer lawsuit, especially where the manufacturer and non-manufacturer defendants are respectively accused of indirect and direct infringement of a method patent.[14]  *Parallel Networks Licensing, LLC v. Superior Turnkey Sols. Grp., Inc.*, Civil Action No.

---

[14] *Sas Inst., Inc. v. World Programming Ltd.*, No. 2:18-CV-00295-JRG, 2019 U.S. Dist. LEXIS 229850, at *8, 11-13 (E.D. Tex. Apr. 4, 2019) ("[T]he customer-suit exception does not apply when the claims against the manufacturer and non-manufacturer defendants are not identical, such as when—as here—the manufacturer and non-manufacturer defendants are respectively accused of indirect and direct infringement of a method patent."); *Rembrandt Wireless Techs., LP v. Apple Inc.*, 2019 U.S. Dist. LEXIS 205698 (E.D. Tex. Nov. 27, 2019);

4:19-cv-516, 2020 U.S. Dist. LEXIS 76750, at *7-8 (E.D. Tex. May 1, 2020) (denying customer's motion to stay because the manufacturer's declaratory judgment action would not resolve the "major issue" of liability for infringement of method claims).

These direct infringement allegations allow Liberty to seek six years of past damages, substantially longer than it could seek for OpenKey's indirect infringement due to the required notice. In the end, a stay of this case would simply waste resources and delay Liberty's attempt to resolve its dispute with Defendants.

Finally, and because the first two important factors cannot be satisfied, the fact that discovery has not yet been completed is not dispositive, and cannot outweigh the first two factors. *See Luv N' Care, Ltd. v. Jackel Int'l Ltd.*, No. 2:14-cv-00855-JRG, 2014 U.S. Dist. LEXIS 158293 at *14-15 (E.D. Tex Nov. 10, 2014) (denying motion to stay where, even though the parties have yet to file a proposed Docket Control Order, the Court found on balance that the other two factors outweighed the third factor); *see also* Ex. A (Marriott Order) at 12 ("The first factor outweighs the last. Staying this action would materially disadvantage Liberty, who is entitled to seek timely enforcement of its intellectual property rights. Any delay at this point, before discovery has concluded, would heighten the risk of evidence spoliation/deterioration."). Moreover, this Court has previously entered a claim construction order concerning several of the asserted claims in this action. Staying this case and awaiting an outcome of a separate court could cause further delays and/or result in inconsistent claim construction decisions.

---

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 2016 U.S. Dist. LEXIS 55205 at *10-12 (E.D. Tex. April 26, 2016) (collecting cases); *Carucel Invs., Ltd. P'ship v. Novatel Wireless, Inc.*, No. 16-cv-118-H-KSC, 2016 U.S. Dist. LEXIS 192609 (S.D. Cal. May 13, 2016); *RegenLab USA LLC v. Estar Techs. Ltd.*, No. 16-cv-08771 (ALC), 2017 U.S. Dist. LEXIS 131495 (S.D.N.Y. Aug. 17, 2017); *Kaneka Corp. v. Zhejiang Med. Co.*, No. CV 11-02389 SJO (SHSx), 2016 U.S. Dist. LEXIS 184735 (C.D. Cal. July 6, 2016); *JoeScan, Inc. v. LMI Techs., Inc.*, No. C07-5323RJB, 2007 U.S. Dist. LEXIS 65498 (W.D. Wash. Sep. 5, 2007); *In re. Laughlin Prods., Inc.*, 265 F. Supp. 2d 525 (E.D. Pa. May 28, 2003); *A.P.T., Inc. v. Quad Envtl. Techs. Corp.*, 698 F. Supp. 718 (N.D. Ill. 1988).

**IV.    CONCLUSION**

For the above reasons, Liberty respectfully requests that the Motion be denied.

Dated: July 12, 2024                      Respectfully submitted,

                                          By:/s/ Jonathan Hardt

                                          Jonathan Hardt (TX 24039906)
                                          Danielle De La Paz (TX 24130716)
                                          **ROZIER HARDT MCDONOUGH PLLC**
                                          712 W. 14th Street, Suite A
                                          Austin, Texas 78701
                                          Telephone: (210) 289-7541; (737) 304-8481
                                          Email: hardt@rhmtrial.com
                                          Email: danielle@rhmtrial.com

                                          James F. McDonough, III (GA 117088)
                                          Jonathan R. Miller (GA 507179)
                                          Travis E. Lynch (GA 162373)
                                          **ROZIER HARDT MCDONOUGH PLLC**
                                          659 Auburn Avenue NE, Unit 254
                                          Atlanta, Georgia 30312
                                          Telephone: (404) 564-1866, -1863, -1862
                                          Email: jim@rhmtrial.com
                                          Email: miller@rhmtrial.com
                                          Email: lynch@rhmtrial.com

                                          C. Matthew Rozier (CO 46854)
                                          Kristin M. Whidby (VA 91805)
                                          **ROZIER HARDT MCDONOUGH PLLC**
                                          500 K Street, 2nd Floor
                                          Washington, District of Columbia 20005
                                          Telephone: (202) 316-1591; (202) 217-0575
                                          Email: matt@rhmtrial.com
                                          Email: kristin@rhmtrial.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the Court's CM/ECF system.  As such, this document was served on all counsel who are deemed to have consented to electronic service.

Dated: July 12, 2024

                                          /s/ Jonathan Hardt
                                          Jonathan Hardt

**List Of Exhibits:**

A.  Joint Notice of Redaction [Order Denying Marriott's Motion to Stay], Dkt. No. 57-1, *Liberty Access Technologies Licensing LLC, v. Marriott International, Inc.*, No. 2:22-cv-00318-JRG (May 22, 2023)
B.  Brochure: Wyndham Hotels & Resorts Mobile App – Features
C.  2024-05-15 - LATL v. Wyndham - Amended ICs - Attachment A - 205 Patent
D.  2024-05-15 - LATL v. Wyndham - Amended ICs - Attachment B - 747 Patent
E.  2024-05-15 - LATL v. Wyndham - Amended ICs - Attachment C - 579 Patent
F.  2024-05-15 - LATL v. Wyndham - Amended ICs - Attachment D - 053 Patent
G.  2024-06-13 - LATL v. Wyndham - Amended ICs - Attachment E - 474 Patent