IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LIBERTY ACCESS TECHNOLOGIES LICENSING LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:24-CV-00125-JRG |
| WYNDHAM HOTELS & RESORTS, INC. and WYNDHAM HOTEL GROUP, LLC, | § § § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Before the Court is the Motion to Stay Case under the Customer-Suit Exception (the "Motion") filed by Defendants Wyndham Hotels & Resorts, Inc. and Wyndham Hotel Group, LLC ("Wyndham"). (Dkt. No. 32.) In the Motion, Wyndham asks this Court to stay this case under the customer suit exception in view of third-party OpenKey's co-pending declaratory judgment action of non-infringement in the Eastern District of Virginia. For the following reasons, the Court finds that the Motion should be **DENIED**.

### II. BACKGROUND

Wyndham uses OpenKey software to allow users with a mobile device running the Wyndham Resort & Hotels mobile application to use the "digital key" feature as a key to a hotel room. (Dkt. No. 32 at 2.) On February 22, 2024, Plaintiff Liberty Access Technologies Licensing LLC ("Plaintiff") brought this action against Wyndham, alleging infringement of U.S. Patent Nos. 9,373,205; 10,657,747; 11,443,579; and 11,217,053. (*Id.*) On May 31, 2024, Plaintiff amended its Complaint to assert U.S. Patent No. 11,373,474 (collectively, "the Asserted Patents"). (*Id.*)

Wyndham counterclaimed that all Asserted Patents are invalid and that Wyndham does not infringe any of the Asserted Patents. (*Id.* at 2-3.) Plaintiff's infringement contentions rely on information and documentation from third-party OpenKey and the OpenKey Functionality. (*Id.* at 2.)

On June 20, 2024, OpenKey filed a declaratory judgment action of non-infringement in the Eastern District of Virginia against Liberty ("the DJ action"), alleging that the OpenKey Functionality does not infringe the claims of the Asserted Patents. (*Id.* at 3.)

### III.   LEGAL STANDARD

"District courts have 'the authority to consider motions to stay litigation before them under their broad equitable powers.'" *Rembrandt Wireless Tech., LP v. Apple, Inc.*, No. 2:19-cv-00025-JRG, 2019 WL 6344471, at *1 (E.D. Tex. Nov. 27, 2019) (citing *Intell. Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372, 1378 (Fed. Cir. 2015)). When two cases are filed in two different districts and the issues in the two cases substantially overlap, the first-filed action generally has priority. *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006). The customer-suit exception is an exception to this general rule. *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 WL 4002776 at *4 (E.D. Tex. Aug. 22, 2018).

The customer-suit exception provides that "[w]hen a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take precedence." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014). This "avoid[s] … imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Id.* (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737–38 (1st Cir.1977)). The "guiding principles in … customer[-]suit exception cases are efficiency and judicial

economy." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). Thus, a "primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990).

Courts in this District consider three factors when evaluating the customer-suit exception: "(1) whether the consumers in the first-filed action are mere resellers of products manufactured by the party in the second-filed action; (2) whether the customers in the first-filed action have agreed to be bound by any decision in the second-filed action, and; (3) whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product." *Rembrandt Wireless Tech.*, 2019 WL 6344471, at *2 (quoting *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 2:16-CV-00618-RWS-RSP, 2017 WL 365398, at *5 n.3 (E.D. Tex. Jan. 25, 2017)).

Additionally, in considering a motion to stay, courts evaluate: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Id.* at *2.

IV.   **ANALYSIS**

   **A. The Customer-Suit Exception Factors Weigh Against Granting A Stay**

Wyndham argues that each customer suit exception factor weighs in favor of a stay. (Dkt. No. 32 at 6.)

As to the first factor ("whether the consumers in the first-filed action are mere resellers of products manufactured by the party in the second-filed action"), Wyndham argues that it is merely a peripheral defendant of the "true defendant OpenKey." (*Id.*) According to Wyndham, Plaintiff's infringement theories pertain exclusively to OpenKey Functionality and OpenKey support. (*Id.* at

3

7.) Wyndham does not alter or customize the OpenKey Functionality and only infringes to the extent it implements OpenKey Functionality. (*Id.*)

Plaintiff responds that certain claim limitations of every asserted independent claim are performed exclusively or in part by the Wyndham Mobile App and Wyndham's reservation and servers. (Dkt. No. 34 at 9-10.) For example, Wyndham itself (not OpenKey) provides "a secure reservation interface to receive a reservation request from a first device for a reservation at a given destination," "a reservation server," and "an application installed on the second device to receive the reservation certificate." (Dkt. No. 36 at 2.) As a result, Plaintiff relies on a combination of functionality provided by OpenKey and Wyndham's own platforms, systems, and mobile application. (*Id.* at 3.) According to Plaintiff, Wyndham is not a mere reseller of an off-the-shelf product, as exists in a traditional manufacturer-distributer case. (Dkt. No. 34 at 10-11.)

The Court finds that the first factor weighs against a stay. Contrary to Wyndham's arguments, Plaintiff's infringement allegations do not rely exclusively on the OpenKey Functionality. Rather, Plaintiff relies on the Wyndham Mobile App and the Wyndham platform to satisfy certain elements of each asserted independent claim, such as the "reservation server," "reservation interface," and "application" limitations. As such, Plaintiff's infringement theory relies on a combination of OpenKey and Wyndham functionalities. Accordingly, the Court is persuaded that this case is not a traditional manufacturer-distributer case in which the distributer does nothing more than resell the Accused Product made by the manufacturer.

As to the second factor ("whether the customers in the first-filed action have agreed to be bound by any decision in the second-filed action"), Wyndham represents that it agrees to be bound by any decision in the DJ action. (Dkt. No. 32 at 9.) Wyndham further notes that OpenKey is indemnifying Wyndham with respect to this patent dispute. (*Id.* at 8.)

4

Plaintiff responds that Wyndham's agreement to be bound by the DJ action is not dispositive of all issues in this case because OpenKey is not seeking a judgment of invalidity against any of the Asserted Patents in the DJ action. (Dkt. No. 34 at 12.) Thus, the DJ action would not dispose of the invalidity portion of this case. (*Id.*)

The Court finds that the second favor weighs slightly in favor of a stay. Though Wyndham has agreed to be bound by any decision in the DJ action, that action will not resolve the issue of validity. Accordingly, the Court gives this factor reduced weight.

As to the third factor ("whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product"), Wyndham argues that the only accused functionality that Plaintiff accuses is the OpenKey Functionality, which Wyndham does not design. (Dkt. No. 32 at 9.)

Plaintiff responds that Wyndham provides functionalities essential for satisfying the asserted claims through its platforms, systems, and mobile application. (Dkt. No. 36 at 1.) As such, Wyndham's liability is independent of OpenKey's liability. (Dkt. No. 34 at 10.)

The Court finds that the third factor weighs against a stay. As discussed with regard to the first factor, Plaintiff relies on the Wyndham Mobile App and the Wyndham platform to satisfy certain elements of each asserted independent claim. Indeed, Plaintiff relies exclusively on the Wyndham Mobile App or platform to satisfy at least one limitation of every asserted independent claim. Therefore, the OpenKey Functionality is plainly not the "only source of the allegedly infringing activity or product."

Having concluded that the first and last factors weigh against granting a stay while the second factor weighs only slightly in favor of granting the stay, the Court concludes on balance that the factors weigh against a stay.

### B. The Traditional Factors Also Weigh Against Granting a Stay

Wyndham argues that all three traditional stay factors also weigh in favor of a stay.

As to the first factor ("whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party"), Wyndham argues that Plaintiff will not be prejudiced by a stay because any relief Plaintiff obtains against OpenKey in the DJ action will exhaust its damages against Wyndham. (Dkt. No. 32 at 10.) Wyndham also notes that OpenKey has the bulk of the relevant information, knowledge, and experience in this case. (*Id.* at 10-11.)

In response, Plaintiff argues that a stay will be unduly prejudicial because Plaintiff has a right to pursue litigation against Wyndham for using and directing their franchisees, guests, and employees to use the Accused Products. (Dkt. No. 34 at13.) Plaintiff also notes that it has the right to timely enforce those rights. (*Id.*) In addition, should the matter be stayed, Plaintiff argues that it would be prejudiced by the potential spoliation of evidence from Wyndham employees. (*Id.*)

The Court finds that the first factor weighs against granting a stay. While the customer-suit exception will almost always result in some delay, such delay is warranted only when the customer-suit exception applies. As discussed above, the customer-suit exception does not apply here. Accordingly, a stay would unduly delay Plaintiff's right to seek timely enforcement of its intellectual property rights before a court of law. Furthermore, a stay would not mitigate Plaintiff's concerns about spoliation of evidence, which is a reasonable risk with any delay. Wyndam's platforms, servers, and Mobile Application constitute relevant evidence that might be lost with the passage of time.

As to the second factor ("whether a stay will simplify the issues in question and the trial of the case"), Wyndham argues that the DJ action will definitively resolve infringement, and that result will apply to this case. (Dkt. No. 32 at 11.)

6

Plaintiff responds that the DJ action will not resolve all issues in this litigation, including infringement by components or actions unique to Wyndham and Wyndham's invalidity claims, which are not at issue in the DJ action. (Dkt. No. 34 at 14.) Plaintiff further points out that it has accused Wyndham of direct infringement, which allows Plaintiff to seek six years of past damages. That damages period is substantially longer than it could seek for OpenKey's indirect infringement due to the notice requirement for indirect infringement. (*Id.* at 15.)

The Court finds that the second factor is neutral. As discussed above, a stay may narrow the issues for trial, but it would not completely resolve all major issues. As noted above, the DJ action will not address the issue of invalidity, which remains a live issue in this case.

As to the third factor ("whether discovery is complete and whether a trial date has been set"), Wyndham argues that this case is in its early stages: both the claim construction hearing (May 15, 2025) and the close of fact discovery (June 30, 2025) are many months away. (Dkt. No. 32 at 12.)

In response, Plaintiff argues that the early stage of the case is not dispositive because the first two stay factors cannot be satisfied. (Dkt. No. 34 at 15.)

The Court finds that the third factor weighs slightly in favor of a stay. As Plaintiff concedes, this case is in its early stages and discovery is not yet complete. Jury selection is set for November 17, 2025, which is approximately a year away.

Having found that the first factor weighs against a stay, the second factor is neutral, and the third factor weighs slightly in favor of a stay, the Court concludes that the balance of the traditional stay factors do not support granting a stay.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the Motion (Dkt. No. 32) should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 8th day of November, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE